**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____ Civ. _____ (        )

_____x

ANDREA K. TANTAROS

*Petitioner*;

-against-

FOX NEWS NETWORK, LLC, SUZANNE SCOTT,
IRENA BRIGANTI, DIANNE BRANDI,
WILLIAM SHINE, ELIZABETH AILES ON
BEHALF OF THE ESTATE OF ROGER AILES

**PETITION IN SUPPORT OF
EMERGENCY OSC FOR
TRO/PERMANENT
INJUNCTION TO STAY THE
ARBITRATION AND RENDER
THE ARBITRATION CLAUSE
UNENFORCEABLE**

*Respondents*.

**ORAL ARGUMENT
REQUESTED**

_____x

Petitioner Andrea K. Tantaros ("Petitioner") alleges as follows in support of her Petition pursuant

to Federal Rules of Civil Procedure for an Order to Show Cause to (1) issue an Emergency

Temporary Restraining Order ("TRO") to halt the nine (9) year arbitration currently

before The American Arbitration Association ("The AAA"), Case No. 01-16-0001-7288,

between Petitioner and Respondents upon findings of *inter alia:* inherent arbitrator bias,

misconduct, exceeding arbitrator authority, procedural impropriety, excessive delays and abuses

of process, and other violations under the Federal Arbitration Act ("The FAA"), the AAA's Due Process Employment Arbitration Rules, which ensure "fairness, neutrality, and due process in arbitration proceedings" (See: AAA Employment Rules and Guidelines) and subsequent Federal law and the Federal and Civil Rules of Civil Procedure (FRCP). Petitioner additionally seeks a permanent injunction to stay the arbitration (2) a Decision and Order rendering Petitioner's Arbitration clause unenforceable, and (3) the opportunity to proceed in court under due process for a fair and proper opportunity to be heard, present evidence and be heard by fair and unbiased decision maker. *(Cf. Coty Inc. v. Anchor Const. Inc.* 601099-12 602, 2003, WL at \*7-8, N.Y. Sup. Ct. Jan. 8, 2003, *aff'd*, 7. A.D.3d, 438, 2004.)

Absent relief from this Honorable Court Petitioner will suffer irreparable harm, unprecedented damages, prejudice and suffer deprivation of her due process rights and access to justice.

## **PARTIES**

1. Petitioner Andrea Tantaros is a resident of New York.

2. Respondent Suzanne Scott is a resident of New Jersey.

3. Respondents Irena Briganti and Dianne Brandi are residents of New York.

4. Respondent Fox News Network, LLC ("Fox") is a media company based in New York.

5. Respondent William Shine is a resident of Florida.

6. Elizabeth Ailes is a resident of Florida.

## **JURISDICTION AND VENUE**

7.  This Court has jurisdiction pursuant to **28 U.S.C. § 1331** and **28 U.S.C. § 1332**, as the matter involves both Federal and State issues.

8.  Venue is proper in this District under **28 U.S.C. § 1391** pursuant to prior agreement among the Parties that adjudication of the underlying dispute is to be held in New York.

## **NATURE OF THE PROCEEDING**

9.  This staggering nine-year (9) year arbitration ("The Arbitration") represents one of the most egregiously unethical and overt displays of unprecedented, myriad violations of both Federal and State laws, precedent and AAA Rules and Protocols that govern Employment arbitrations and an utter disregard for justice and impartiality by a chronic perversion of due process.

10. The magnitude of violations under Federal and State Law cannot be understated. The Arbitration is rife with *inter alia*, inherent and overt bias against Petitioner, unconscionable arbitration costs billed to Petitioner, procedural misconduct, blatant arbitrator conflicts, failures to disclose conflicts of interest, the exceeding of arbitrator authority ordering Petitioner to execute a Non-Disclosure Agreement ("NDA") cementing her eternal silence, excessive and baseless delays, facilitating abuse of process and manifest disregard for the law.

11. Courts hold that "Arbitrators are bound by fundamental principles of due process and fairness. Arbitrators may issue procedural orders, but they must provide a fair process" (See Rule 23, AAA Employment Rules and Guidelines). In this case, the Arbitrators have willingly yielded the driver's seat to Respondents while they have taken a back seat. Petitioner has been relegated to the trunk.

12. On January 17, 2025, The Arbitrators issued an Order abruptly ending the Arbitration without legal justification or a contractually-required "**full, written Opinion**" to explain its

reasoning for same per the contractual requirements of the Arbitrators as outlined in Respondent's Arbitration Clause (below). This explicitly violates U.S.C 3. § 10(a)(3) as the arbitrator has refused to hear material evidence or denies discovery or refuses to allow key testimony prejudicing Petitioner's rights. While Arbitrators are given certain discretion in their roles, arbitration is a creature of contract. And, because an agreement to arbitrate is governed by the rules of contract interpretation, "the courts must give effect to the contractual rights and expectations of the parties, courts must ensure the process aligns with what the Parties agreed to in their contract". In the Order of January 17, 2025, the Arbitrators have gone from dithering at a glacial pace to a sudden lead-footed speed to issue a Final Award and Decision without completing discovery, depositions, and the holding of Final Hearings where evidence can be presented and testimony heard per FRCP and AAA Rules and Fairness Protocols that govern Employment Disputes. After collecting deposits for hearings, ordering depositions in 2017 and Assuring the Parties that "final hearings will happen", and that "Petitioner is entitled to her day in court", the January 17, 2025 Order "closed the record". No contractually-required Decision to accompany the Order was provided or reasoning for denying Petitioner the same relief afforded to Respondents.

Further, Courts have enjoined arbitration when the arbitration agreement is unconscionable or unenforceable (*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) or, the arbitration would cause irreparable harm, including loss of rights and / or the Arbitrator lacks jurisdiction (*Silvano v. Merrill Lynch, Pierce, Fenner & Smith, Inc. 85, N.Y. 2d 173, (1995).*

13. The Arbitrators have not been mutually-selected. They have failed to write full, written decisions to explain their reasoning for the duration of the arbitration in violation of the Arbitration Clause. Further, there is no three-member Panel actively executing or deciding

Orders. Only a singular Arbitrator, Howard C. Edelman, a lifelong employee of the AAA, claims he was "granted authority to issue decisions without getting all of [the full Panel's] signatures." Repeated requests for both explanations and clarifications under AAA Rules from Petitioner have repeatedly been ignored. Petitioner has been held to a far higher standard of invasive and comprehensive discovery by the Arbitrators to which she has strictly adhered to with proactivity, precision and enthusiasm to move her case forward.

Respondents have refused to actively participate in the arbitration process, outright refusing Orders, requesting ongoing extensions, postponements, continuances and pleading for cancellations of Panel-ordered meet-and confers on outstanding discovery, scheduling of depositions and the submission of a required joint status report. Respondents flatly refuse to comply or reschedule any meet-and-confers with Petitioner… with a pass from the Arbitrators. Respondents have presented nothing but obfuscation, projection, misleading statements, personal attacks and groundless, ongoing motions to protract alleged, easily remedied disputes to exhaust Petitioner financially and emotionally. Respondent Elizabeth Ailes, on behalf of the Estate of Roger Ailes, breached both the Arbitration Clause and the Fox News' generated NDA without any punitive action from the Arbitrators. Per the Arbitration Clause, "*A Breach of confidentiality by any party shall be considered to be a material breach of this Agreement.*"

Like NFL referees at a Kansas City Chiefs game, the Arbitrators have habitually blocked and tackled on behalf of Respondents each time they are faced with making a decision that would adversely affect repeat, VIP-client Respondents, subject their executives to depositions or move the case forward to final hearings on the merits.

14. As exemplar, Arbitrators unjustifiably *cancelled* a crucial meet-and-confer less than 45 minutes prior to the meet-and-confer due to Respondent's eleventh-hour plea with no substation for such drastic relief. The July 11, 2024 meet-and confer was ordered by the Panel to resolve discovery disputes, schedule depositions of the Respondents, coordinate the exchange of responsive information or other easily solved obstacles to case advancement. Arbitrators have habitually refused written requests by Petitioner to reschedule these necessary meetings to

progress proceedings toward depositions and final hearings in compliance with their orders.

15. In the last two (2) years alone, the arbitration has solely centered upon Respondents repetitive filings of Motions to Dismiss Petitioner's case. Like the incessantly barking dog in Sherlock Holmes' Silver Blaze, Respondents have unscrupulously usurped time and money manufacturing the same, singular disruptive argument devoid of any legal foundation or justification for full dismissal of Petitioner's case. The Arbitrators have improperly facilitated this obvious abuse of process by permitting procedural misconduct and gamesmanship that would be forbidden in any court or neutral tribunal.

16. It is an impossibility for the Arbitrators to make an informed, fair and just *Final Decision and Award by February 7, 2025* without ever holding depositions and hearings to scrutinize evidence, issue subpoenas (if necessary), examine all underlying facts, determine an accurate assessment of both punitive and comprehensive damages. This includes damages relating to the retaliatory ruination of Petitioner's book, personal and professional reputation, blacklisting her from procuring another job in media for almost a decade, the forensically-proven hacking of her electronics, and proof of Respondents' public smear campaigns in allied media outlets and on social media platforms designed to destroy her credibility.

17. A Final Award cannot be fairly and validly granted without consideration of first-hand testimony from the Parties and third-party witnesses. The Arbitrators have permitted Respondents to seek third-party discovery while prohibiting Petitioner from seeking same or submitting any first-hand testimony coupled with evidence that would easily meet the standards for summary judgement.

18. The Arbitrators lack proof of Petitioner's sexual harassment and retaliation complaints as evidenced in Respondent's *own privilege log provided in discovery both proving Petitioner's claims and refuting Respondents' counterclaim*. The same privilege log showcases years of discussions surrounding Petitioner's reports of sexual harassment as far back as 2015, emails produced from 2013 – 2016 proving conversations around Petitioner's book with Respondents, communications from February 19, 2016 show Respondent Brandi approving a quote for

Petitioner's book jacket… the same book Respondent's used as a pre-textual smokescreen to suspend her from the airwaves under the false auspices they "weren't aware of any such book".

Two of the arbitrators are new and lack the facts and history of the case. The third arbitrator has made inappropriate and inaccurate statements during two status conferences demonstrating a lack of knowledge regarding case posture, admittedly forgetting discovery was completed in 2018 and that he, along with the two prior arbitrators, had ordered depositions in 2017.

Both Petitioner and counsel for Respondent William Shine had to correct the Arbitrator who made repeated erroneously statements. As cited, Arbitrator, Edelman, serves as the Chairman of the Panel and has unusually and solely executed all Orders on behalf of what is contractually-required to be a three-member Panel, though the other two members' execution of all orders are absent from every decision. The AAA Case Manager wrote on January 7, 2025 that only a singular *"arbitrator"* was having filings forwarded to him. Following this admission, Petitioner immediately inquired if a three-member Panel exists three (3) times since then. She has received no answer confirming same.

19. Racing to issue a Final Award without allowing Petitioner equal opportunity to submit Motions to Dismiss Respondents' frivolous counterclaim or hearings on the merits would violate public policy and further build upon conduct by both Respondents and the Arbitrators that has rendered the arbitration unenforceable.

20. This established, documented pattern and practice of issuing orders that change faster than San Francisco weather, granting every request of Respondents without adherence to any basic fundamentals of the Rules of Civil Procedure and denying Petitioner equal relief underscores inherent bias and partiality. The Arbitrators' habitual unfairness through their Orders shields Respondents from any scrutiny or accountability. It now seeks to alarmingly terminate the case in violation of both controlling law and the AAA's Protocols for Due Process.

21. The actions taken by the Arbitrators have violated the plain language in the Parties

Employment Agreement, overt Arbitrator conflicts, and the AAA's administrative decisions have undermined the integrity of the arbitration has been irreversibly compromising the critical nature of its impartiality. It is "precisely because arbitration awards are subject to judicial deference that it is imperative that the integrity of the process, as opposed to the correctness of the individual decision, be zealously safeguarded" (*Goldfinger v. Lisker, (68* N.Y. 2d 225, 230), (1978).

Courts have well-established precedent to intervene when fundamental fairness and violations of Federal Law are at risk of causing imminent and irreparable harm. Absent immediate and emergency Federal Court intervention, Petitioner would be irreparably harmed, further damaged by manifest disregard and would preclude a Petitioner from vindicating her statutory rights.

## **FACTUAL BACKGROUND**

22. Petitioner and Respondent Fox News Network, LLC ("Fox") entered into an Employment Agreement on August 17, 2014.

Petitioner's Agreement contains an arbitration clause ("The Arbitration Clause") that specifies in full:

*"Any controversy, claim or dispute arising out of or relating to this Agreement shall be brought before a **mutually selected**, **three member arbitration panel** and held in accordance with the Rules of The American Arbitration Association then in effect. **The arbitrators shall issue a full, written opinion setting fourth the reasons for their decisions**. Such arbitration, all filings, evidence and testimony connected with the arbitration, and all relevant allegations and events leading up to the arbitration, shall be held in strict confidence. Judgement may be entered on the arbitrators' award in any court having jurisdiction; however, all papers filed with the court either in support of or in opposition to the arbitrators decision shall be filed under seal. Breach of confidentiality by any party shall be considered to be a material breach of this Agreement."*

23. A dispute arose between the parties beginning on or around August 2014 and

culminated on February 19, 2016 following years of internal complaints lodged by Petitioner and her entertainment counsel as evidenced in Respondents own Privilege Log and accompanying responsive documents produced in discovery including letters to former, disbarred General Counsel and Respondent Dianne Brandi ("Brandi"), **(Exhibit #1 - "3.13.2016 Letter to GC Dianne Brandi").**

Respondents subsequently suspended Petitioner from the air on April 25, 2016 after demoting her to a less-desirable on-air time-slot, stopping her guest-hosting primetime opportunities, profile requests from media, curtailing her television appearances and media regarding her profile and sales of forthcoming book, including but not limited to a coveted Ted Talk and appearances on popular programs such as Real Time with Bill Maher, initiating a public smear campaign against her using allied media outlets and online 'astroturfing' (ie: using fake social media accounts to hurl derogatory slurs), criminally surveilling all of her communications by hacking her phone, email and computers, including deleting critical, case-altering documents, files and journalistic sources and contacts. Respondents have acted above the law by openly conceding they not only wiped Petitioner's work Blackberry to deprive her of key evidence, but also that they've failed to take proper steps to preserve evidence admitting to the intentional destruction, deletion and loss of evidence relevant to litigation. The Arbitrators have denied motions filed by Petitioner citing Respondents spoliation of responsive information and ESI in anticipation of litigation and after the commencement of the arbitration which they have a duty to preserve (See: *Zublake vs. Warburg, LLC.* (Zublake IV),  220 F.R.D. 212 S.D.N.Y. (2003).

24. Respondents publicly insisted her complaints of sexual harassment, retaliation and hostile workplace were 'manufactured' months prior to facing a cascade of lawsuits against them

containing identical claims of a toxic workplace, abuse, sexual harassment and retaliation from female employees who followed in Petitioner's footsteps months later. Respondents have utilized every tactic to persuade the Arbitrators to avoid scheduling depositions and hearings on the merits where Petitioner can show proof of complaints of sexual harassment dating back to August 18, 2015 *as evidenced in Respondent Fox News' own Privilege Log* (**Exhibit #2 – "Excerpt from Fox News Privilege Log"**).

This one piece of discovery among many unequivocally supports Petitioner's claims and undermines Respondents' defense that Petitioner is an "opportunist and wannabe" who concocted her claims in March of 2016 to "muddy the waters". It adds additional causes of action and amplification of

damages. (1)

25. A demand for Arbitration under the AAA Employment Rules and Guidelines was filed on May 11, 2016 (**Exhibit #3 - "5.11.2016 Demand for Arbitration"**).

(1)    Since Petitioner's internal and legal complaints were filed, over 32 Fox News employees have followed her lead and come forward with identical allegations. Fox News has been investigated by a grand jury empaneled by the U.S. Attorney for the Southern District of New York, the Federal Bureau of Investigation, New York State and City Commissions on Human Rights and their own Shareholders. Petitioner has cooperated as a witness in all investigations. Fox News has fired over a dozen male executives and talent, including Respondents Ailes, Brandi, and Shine in this action for the same claims lodged against them by Petitioner. Fox News Network has spent over $200 million dollars in payments to victims and $92 million dollars to their shareholders in a suit filed in 2016 that cited inter alia: breach of fiduciary duty, breach of contract and negligence, and included Petitioner as "a loss of high profile talent" due to Fox's toxic work environment, retaliatory tactics including intimidation and surveillance, and pervasive sexual harassment and misconduct (See: City of Monroe County Retirement System v. 21st Century Fox et al, 2017). Currently, Fox Corporation Shareholders are unaware of the tens of millions in legal fees and costs spent on this action against Petitioner using over twelve (10) law firms and thirty four (34) known lawyers, SME's and contractors in nine (9) years.

## I.    The Arbitration Must Be Enjoined Due to Multiple Violations of AAA including Arbitrator Bias, Misconduct, Conflicts, Exceeding Arbitrator Authority and Unconscionability

### A.  The Arbitrators Possess Multiple Conflicts Of Interest That Undermine The Integrity of The Arbitration And Warrant Disqualification

In March of 2023, Petitioner was alerted that the Panel had been dissolved. Two of the required three Arbitrators had departed without notice from the AAA. For over thirty (30) months, the AAA concealed this information and continued to send Petitioner monthly invoices in the amount of $79,520.00 for Arbitrator tasks and work and requested case updates to relay to the full panel…except there was no Panel in place. Only lifetime Arbitrator and employee of the AAA, Howard C. Edelman remained.

Case Manager Gomez only notified Petitioner of the lack of a contractually-required three member Panel when Petitioner sent a communication addressed to the former Arbitrators two weeks after receiving the communication.

Per the Arbitration Clause, Arbitrators must be *mutually-selected.* The Parties agreed on one arbitrator from the list provided, the first female, Loretta M. Gatswirth. In violation of the Parties Arbitration Clause, the AAA unilaterally decided Michael G. Berger would be selected as the third Arbitrator and Howard Edelman would serve as Chairman. AAA Employment Rules state the Parties mutually select the Chairman, not the AAA. Petitioner subsequently requested Berger to submit any conflicts. Berger listed multiple disqualifying facts including (i) had served as Counsel at the law firm of Epstein Becker and Green ("EB&G"), the outside firm that represented both Respondent Fox News Network for over two decades and Respondent CEO Roger Ailes, (ii) Epstein, Becker and Green attorneys Barry ("Asen") and Ronald Green ("Green") had been involved in multiple internal Fox meetings in March 2016 regarding Petitioner's complaints of sexual harassment, retaliation, hostile workplace, hacking, and tortious interference, (iii) EP&G claimed to have conducted a purported investigation into Petitioner's claims calling them "manufactured" despite supporting evidence including letters from

Petitioner's counsel and Respondent's own Privilege Log, (iv) Asen and Green drafted the illegally-structured, seven-figure settlement agreement that Petitioner refused to sign as it would violate multiple criminal statues, including shielding payments to Fox News Network's Board of Directors, Shareholders (of which Petitioner is one) and the Securities and Exchange Commission, (v) Following Petitioner's rejection of the unlawful settlement, Asen filed the Demand for Arbitration on March 11, 2016.

26. On behalf of Respondent, Asen filed the Demand for Arbitration to intimidate Petitioner and force her into mandatory silence, (vi) Asen and Green made multiple defamatory statements against Petitioner to the press and in court filings calling her, among other derogatory names, "a liar", "an opportunist and a wannabe" (vii) Berger had served as Asen and Green's personal attorney, and; (viii) Berger had co-counseled with Petitioner's prior counsel, Judd Burstein "Burstein", who was admittedly longstanding, close friends with Asen and Green.

27. Following Berger's arbitrary appointment by the AAA, Petitioner learned Asen, Green and Burstein were on the arbitration witness list underscoring an additional reason for disqualification. (**Exhibit #4, Michael G. Berger Arbitrator Disclosure".** Moreover, if an arbitrator is too conflicted to represent Petitioner as a client, he is unfit to fairly adjudicate the case.

28. Most importantly, Asen and Green continue to serve as outside counsel for Respondent Fox News Network and are intimately involved in this action. Asen and Green are responsible for ongoing retaliation against Petitioner and retention of outside contractors to hack, surveil and create ongoing, disruptive attacks against Petitioner and other Fox News female employees who have lodged similar complaints and lawsuits. The aforementioned conflicts of interest disqualify Berger's ability to avoid even the appearance of partiality comprising the integrity of the arbitration.

29. Per the AAA Rules on Arbitrator Disqualification and Qualification it explicitly states: "There must be complete faith in the arbitration impartiality. Disqualification exists when facts give rise to justifiable doubt of an arbitrator's impartiality or independent bias". Disqualification

is appropriate when there is a question of partiality or independence. An arbitrator must have no relation to the underlying dispute, or to the parties or their counsel that could create the appearance of bias." (AAA Rule 19 on Disqualification, Rule 12 on Qualification of Arbitrators).

30. Petitioner alerted the AAA Case Managers Gomez and her Supervisor, Heather Santo, on Wednesday, June 7, 2023 citing the AAA's selection of Berger "not only underscores the organization's lack of careful and effective vetting, but also illustrate a total disregard for overt conflicts that go well beyond problematic." The Due Process Clause of U.S Constitution requires recusal "where there is otherwise a strong possibility that the judge's decision will be biased."

31. On July 13, 2023, Petitioner filed a Motion for Recusal highlighting Berger's unilateral confirmation without mutual-consent as "highly inappropriate, a violation of the AAA Rules and Petitioner's Arbitration Clause." The motion enumerated how his conflicts of interest were both unconscionable and unacceptable. Petitioner sought relief through respectfully requesting a more suitable replacement **(Exhibit #5 - "7.13.23 Motion to Recuse Arbitrator Michael G. Berger").**

32. The AAA rejected the Motion for unspecified reasons and refused to consider any further action. Three days after filing, Gomez informed the Parties that Loretta Gatswirth, a mutually-selected and confirmed arbitrator was suddenly removed. The AAA had chosen Dennis M. Cavanaugh without consideration or approval from the Parties to replace the only female to ever serve as an arbitrator on this action with no justification. Berger's confirmation as arbitrator was left in tact.

33. The second arbitrator, and AAA-appointed Chairman of the Panel, Howard C. Edelman "Edelman" has failed make required disclosures that breach AAA Rules and "undermine the integrity of a fair and impartial arbitration" (AAA Rules on Due Process and Fairness Protocols). Edelman is the only arbitrator who has served on the Panel since the beginning of case proceedings. Edelman has solely been employed as a AAA arbitrator since 1972.

34. In 2017, Edelman was successfully sued by Maureen Schwartz ("Schwartz") a teacher

who alleged Edelman "colluded" with the Defendants during her arbitration, "purposefully delayed hearings…and overcharged her alleging collusion and unjust enrichment" and violation of Judiciary Law § 487 (*See: Schwartz v. Edelman, N.Y. Sup. Ct.,* Slip Op. 735 § (2018). Schwartz prevailed in court and Edelman settled the matter for an undisclosed amount to avoid a jury trial.

35. Edelman failed to disclose this case to Petitioner per AAA R-17 necessitating "a continuing obligation" to make disclosures regarding" any circumstance that might raise doubts about their impartiality."

Such behavior requires immediate disclosure and disqualification from the AAA. On multiple occasions Edelman has displayed a lack of knowledge of the case posture including not having knowledge that discovery of responsive documents was completed after exhaustive and expensive back-and-forth between the Parties in 2018, that Respondents are still withholding key, responsive categories, and that he ordered depositions of all five Parties in 2017. Edelman, who has now admitted to be the singular signatory on all Orders, must demonstrate a command of the facts surrounding the case and his past orders. He has not. Moreover, Edelman has made inappropriate remarks such as opening a September 7, 2024 Status Conference by joking that "we're here to decide if we're going to move forward or get rid of this whole thing". His comments displayed a complete disregard for the subject matter or profound amount of time, money, and career damage caused by nine years of protracted litigation with a major corporation that has a well-proven, notorious pattern and practice for ruining the lives of women who have been sexually harassed, abused, and retaliated against for rebuffing the sexual advances of male executives and employees.

**B.  The Arbitrators Have Exceeded Their Authority in Violation of 9 U.S.C. § 10(a)(4):**

36. Respondents unilaterally drafted an illegal Non-Disclosure Agreement ("NDA") akin to an unlawful gag order of Petitioner. As part of Respondent's efforts to permanently muzzle Petitioner and ultimately have her case dismissed, Respondent's have argued that Petitioner must

personally execute their unlawful NDA.

37. The Arbitrators in this action have repeatedly ordered Petitioner to sign the NDA or threaten her case will be dismissed with prejudice via Respondent's repetitive filing of a motions seeking dismissal of Petitioner's claims. Arbitrators lack the authority to order an individual and victim of sexual harassment, retaliation and discrimination to execute an illegal "NDA" (*emphasis added on Arbitrators' use of term "NDA"*). (**Exhibit #6 – "Respondent-Drafted Illegal NDA").** Specifically, Petitioner has cited changes in public policy that prohibit their orders. In New York, any NDA must be **voluntary**, with protections ensuring the victim has time to consider and revoke it. If an arbitrator attempts to impose an NDA, it would be unenforceable under New York General Obligations Law, CPLR-5003-b. This also applies to the Confidentiality Clause in Petitioner's Employment Agreement and Arbitration clause that is now narrowly-tailored to allow Petitioner to speak about her experiences, specifically sexual harassment and retaliation that occurred pre-dispute. NDAs are entirely voluntary and cannot be grounds for dismissal of Petitioner's case. Petitioner has offered several options to both Respondents and the Arbitrators to remedy this matter, including 1) drafting of a new, legally sound document to address concerns by all Parties, 2) amending language in the document that would ensure both Petitioner's rights are protected and the document is compliant with the law; 3) Petitioner requested the Arbitrators utilize their discretion by citing paragraph 9 (a)(b) of the NDA that states that (a) "Nothing herein shall restrict the power of the Panel to modify this Stipulation or any term hereof for good cause shown and in a manner consistent with the terms of the Employment Agreement; (b) Nothing herein shall preclude any party from moving the Panel to modify the terms of this Stipulation or the designation of any document or information in a manner consistent with the terms of the Employment Agreement.

38. Despite Petitioner's efforts, the Arbitrators have refused Petitioner's proposals to make the NDA legally-compliant and acceptable to all Parties.

The laws that govern NDAs stating that sexual harassment or discrimination claim is resolved (via settlement or arbitration), any NDA: Must be the preference of the complainant (victim), must allow the victim at least 21 days to consider the NDA and an additional 7 days to revoke it. An NDA cannot prohibit the victim from speaking to law enforcement, government agencies, or testifying in legal proceedings. (New York General Obligations Law § 5-336 & NY CPLR § 5003-b., Restrictions on NDA); The Federal Speak Out Act (2022).

39. The Arbitrators are currently basing their Final Decision and Award, including dismissal of Petitioner's case, on the basis of her exercising her rights to these key protections in the law.

### C. The AAA and Arbitrators Have Displayed Inherent Bias and Procedural Misconduct in violation of 9 U.S.C. § 10(a)(3)

40. From the commencement of the arbitration nine (9) years ago, the Arbitrators have demonstrated inherent bias toward Petitioner. On July 9, 2016, the AAA imposed a Commercial Fee Schedule to a clear Employment Dispute between an Employer and Employee in violation of both the Demand for Arbitration under The AAA Employment Rules and Guidelines (**Exhibit #7 - AAA July 9, 2016 Commercial Fee Schedule Letter".** This errant and inexplicable decision saddled Petitioner with exorbitant costs and filing fees in excess of $200,000.00 causing financial hardship and preventing the vindication of her claims. Repeated threats of case termination should she fail to pay were unrelenting (**Exhibit #8 - "12.19.23 Gomez Email Threatening Termination of Arbitration"**).

41. Following the exhaustive and costly process of production of responsive documents, Petitioner learned Respondents had *inter alia:* violated their indisputable document preservation obligations by failing to assert a Privilege Hold and suspension of any auto-delete functions until

September 1, 2016–four months after filing their for Demand for Arbitration and over a year and half following Petitioner's complaints of sexual harassment and retaliation. Respondents purportedly conceded to deleting all internal "Topline" messaging during multiple litigation proceedings and investigations, Respondents' primary messaging platform, allegedly "for no more than one day." Respondents also admitted to remotely wiping Petitioner's work Blackberry and locking her out if her files, work email, and contacts containing key documents and evidence on April 25, 2016 (**Exhibit #9 - "8.17.18 Discovery Letter to Respondents Regarding Spoliation"**). Such conduct warrants sanctions against Respondents and at minimum, an adverse inference that this spoliation of thousands of pages of responsive data was deliberate to undermine Petitioner's case.

42. Despite a preponderance of evidence proving same, the Arbitrators refused to grant Petitioner's Motion for Sanctions. In their Order, the Arbitrators did not comply with their contractual obligations to generate accompanying decisions to their orders. Decisions have been absent from every Order except one issued on August 15, 2024.  This constitutes bias, violates the terms of Petitioner's Arbitration Clause and demonstrates procedural misconduct. Due to Respondents' obstruction to production of responsive documents, refusal to search key terms and answer interrogatories, the Parties filed simultaneous Motions to Compel on September 7, 2018. In a patently unfair abuse of process by Respondents, they attempted to retroactively amend their Motion to Compel by filing a new round of Motions with new arguments via their Replies which left Respondent no opportunity to to oppose and rebut the claims. The Parties had already stipulated to, and the Arbitrators had already approved the procedural process in this case. The Parties would propound discovery, including requests for production of documents, and after each party responded to those requests and produced the documents, the propounding parties

could bring motions to compel further documents or document production. Then the Panel would

rule on the motions to compel and afterwards the parties would move on to the deposition phase.

*"Ms. Tantaros has incurred tens of thousands of dollars responding to a series of frivolous motions by The Fox Parties. She should not be unfairly burdened with responding to untimely and impermissible motions. This panel should decisively reject this latest gamesmanship and frivolous stall tactic. Further, the panel should simply rule on the original motions and allow the parties to move to the deposition phase as stipulated by the parties in the orders already approved by the panel. Similar to its motion to stay, Fox is doing everything in its power to muddy the waters and delay the inevitable depositions of its key figures"* (**Exhibit #10 - "1.17.19 Letter to Arbitrators Regarding Procedural Impropriety"**).

43. Despite such unprecedented misconduct, this procedurally impermissible abuse of

process was allowed by the Arbitrators and Petitioner was, and still is, severely prejudiced by

this overtly impartial decision. Despite the Parties stipulating to depositions and hearings, and

the Arbitrators approving these via orders, the Arbitrators have used every excuse to deny the

scheduling of same. In their January 2019 Orders on the Parties' Motions to Compel,

Respondents were *inter alia*, not ordered to produce their electronic devices, identify their

personal emails or search them, answer interrogatories, and search key custodians. Petitioner was

held to a completely disparate standard. Though Petitioner had already identified and searched

her personal emails, produced all responsive information in these accounts, and answer

interrogatories, she was ordered to conduct a fifth round of forensic examination on her Fox

Blackberry and personal computer at her expense of $18,362.50 "to be reimbursed upon Final

Award"). Despite Respondents admitted spoliation of evidence and forensic reports proving

Respondents had hacked her devices, Petitioner's Motion for Spoliation Sanctions was denied by

the Arbitrators with no accompanying, contractually-required opinion.

44. Such inequities in Arbitrator orders favoring Respondents and and putting an unfair onus

on Petitioner have been both habitual and overt through Arbitrator Orders. In nine (9) years the

Arbitrators have held only four (4) Status Conferences despite Petitioner's proactive requests for additional conferences and hearings to resolve easily remedied issues relating to discovery including the scheduling of depositions and final hearings.

45. For over 2.5 years the AAA failed to inform Petitioner the Panel was dissolved, despite sending monthly invoices in the amount of $79,500.00 for work and services of Arbitrators no longer serving as Panelists. Despite Petitioner's Arbitration Clause stating the Arbitrators must be mutually-selected, the AAA has intervened to choose Arbitrators with direct ties to Respondents' counsel. As cited above in Section A of this Petition, Arbitrator Michael G. Berger is a former law partner and personal attorney for Respondent Fox News Network's outside counsel Barry Asen and Ronald Green Both Asen and Green are still entrenched in Petitioner's case and under retainer by Respondents. Berger has additionally co-counseled with Petitioner's prior counsel, Judd Burstein. All three attorneys are on the arbitration witness list. Despite Petitioner's demand for removal citing AAA Rule 19 on Arbitrator Disqualification, her Motion to Recuse **was not even considered by the AAA Administration.** Rather, a mutually-selected, confirmed female Arbitrator was removed by the AAA in favor of another AAA choice, Dennis M. Cavanaugh. Petitioner was not given consideration in violation of her Arbitration Clause stating "all Arbitrators must be mutually-selected."

46. Procedural misconduct has plagued the arbitration from its inception. For the past two (2) years, the sole focus of the arbitration has been Respondents' repetitive filing of frivolous and confusing Motions to Dismiss Petitioner's case, waste time and exhaust resources of Petitioner. Respondents have utilized a revolving door of over a dozen law firms and over thirty-four (34) attorneys to avoid any legitimate discovery or a trial on the merits. Respondents fourth Motion to Dismiss was denied **_with prejudice_** on August 15, 2024, yet the

Arbitrators continue to permit them leave to file renewed motions to dismiss with oral argument.

In October of 2024, the Arbitrators granted Respondents' a fifth opportunity to re-file their attempt at dismissal of Petitioner's case and scheduled oral argument for November 11, 2024. In their Order they stated the Panel word not entertain any other communications prior to oral argument. This order was another example of a pattern and practice of denying Petitioner an equal opportunity to seek similar relief and forbid Petitioner from submitting any correspondence or other questions seeking clarification effectively shutting her down. Petitioner's respectful requests are summarily denied without reason or Arbitrators are unresponsive to same.

Petitioner's inquiries for contractually-obligated opinions to accompany Arbitrator Orders are ignored despite sending repeated, respectful requests.

47. Following the second Status Conference in two (2) years—and fourth Conference in nine (9) years—originally scheduled for on June 7, 2024. In another effort to delay proceedings, counsel for Respondents, Paul Evans, asked for a postponement giving no reason for same. The Status Conference was re-scheduled for June 21, 2024 "with no exceptions". During the call, Petitioner raised multiple issues that necessitated a meet-and-confer between the Parties, including scheduling depositions and discussing any outstanding discovery issues that were easily remedied in order to advance the case. Respondents immediately objected. The the Arbitrators granted a meet-and-confer for July 11, 2024 (**Exhibit #11 – Arbitrator Order of 6.10.24"**). On July 12, 2024, Evans wrote the Panel citing his inability to participate. Less than forty-five (45) minutes before the call, and upon receipt of Petitioner's circulated call agenda, the Arbitrators issued an Order cancelling the meet-and-confer (3).

(3) Despite the Order being dated July 10, 2024, it was sent to all Parties less than one hour before the call, raising questions of why the Arbitrators clearly backdated the Order to avoid any further blatant questions of last-minute interference).

The Arbitrators refused to give a reason for such an abrupt, inexcusable decision. Petitioner attempted to reschedule the call and procure a reason why it would be cancelled. Her written requests were ignored (**Exhibit #12 – 7.31.24 Petitioner Letter Re: Cancellation of Meet and Confer Without Notice"**).

48. The Arbitrators demonstrated additional procedural misconduct by changing their Order of January 21, 2019 stating Petitioner conduct an additional (fifth) round of forensics on her personal devices following Motions to Compel. (4)

Since the original Order was issued on January 19, 2019, the Arbitrators changed the Order to permit Respondents to unlawfully retrieve Petitioner's personal devices from Cycura, Inc. in Canada. Such an order represents a flagrant disregard and defiance of current precedent regarding chain of custody in ESI/hacked device matters.

4) Petitioner's devices have been in the custody and control of cybersecurity firm Cycura, Inc. in Toronto, Canada since 2017. The Panel and Respondents have both been aware of this fact for years. In compliance with the Panel's order, Petitioner paid Cycura $18,362.50 to conduct an additional round of forensics on her devices in May of 2022. During that time Cycura, Inc. was purchased by WellHealth Canada, a company located 3,000 miles away in Vancouver, Canada owned by an investor closely affiliated with Fox Corporation, parent company of Fox Network. Despite receiving payment in full, Cycura failed to conduct the examination through a neutral third-party vendor affiliate. Petitioner's requests, and ultimately demands, for return of her devices went unanswered. On May 15, 2024 Petitioner filed an official report with the Toronto Police for theft of her devices. On December 3, 2024, Petitioner spoke with the lead Detective who stated he interviewed Patterson. Patterson claimed "he could not locate the devices". The investigation is still ongoing. The aforementioned reports and exchanges between Petitioner and the Toronto Police have been produced to the Arbitrators. Respondents requested a 60-day continuance to further protract proceedings. It was granted by the Arbitrators. In their X letter requesting another opportunity to file a Renewed Motion to Dismiss Petitioner's claims, Respondents claimed they obtained an affidavit from WellHealth Canada stating they did not have Petitioner's devices. Respondents did not produce any such affidavit to support their allegations.

Such an order by the Arbitrators constitutes an audacious unprecedented, complete and

utter breach of presiding Federal and State procedure and precedent regarding Chain of Custody

and integrity of evidence. There is no example in any Federal or State case where a Party (Fox

News Network) with a notorious, documented and pervasive criminal history of hacking has

been permitted to take possession of the victim's personal electronics to conduct their own

examination.  Allowing a corporation that is notorious for hacking into its adversaries'

electronics to take possession of their devices for "forsensic examination" is akin to allowing

Jeffrey Dahmer to perform the autopsy on his victims without any supervision or neutral

examination.

   This disregard for both Federal and State chain of custody precedent, and Fox News

Network's / Fox Corp's past convictions and multi-million dollar settlements for hacking into the

personal electronics and phones of victims underscores inherent bias that can only be construed

as collusion. (5)

---

5) Fox has paid over $100 million to settle hacking lawsuits in the United States alone. "Sexual Harassment Isn't Only Scandal That Threatens Murdoch's $14B Deal", https://www.npr.org/transcripts/525337958. In the U.K., Fox-owned properties have been investigated by the British government in the Leveson Inquiry in 2012. "Hacking Scandal Puts Spotlight on Murdoch Tabloid, https://www.npr.org/2011/07/07/137666845/hacking-scandal-puts-spotlight-on-murdochs-tabloid. Several key executives working for Fox-owned companies such as The News of the World were sent to prison. Currently, seven lawsuits against Fox-owned companies are pending in U.K. Courts for computer hacking, surveillance and 'blagging' or illegally accessing victims medical and bank records. In 2021, the New York Commission on Human Rights "NYCCHR" charged Fox News Network with hacking, spying, illegally accessing text messages emails, deletion of data and manipulating the computer systems of female employees who complained about sexual harassment like Petitioner (See: "NYCCHR Report in Petitioner's Supporting Memorandum of Law).

Petitioner has alerted the Arbitrators on multiple occasions that Respondents hacking and other methods of illegally monitoring her phone, computers, electronic devices, including WiFi, is ongoing and has continued from her time of employment through the entire arbitration period. Petitioner has produced supporting evidence including forensic reports to support this fact. Petitioner has requested emergency conference calls and / or hearings to address her lack of privilege between Petitioner and her counsel for the entire duration of the arbitration. The Arbitrators have ignored her requests. The only mention of hearing and seeing evidence Arbitrators stated in their Order of August 15, 2024 is that Petitioner's claims of hacking (completely verified by the NYCCHR and forensic examinations) would addressed at the final hearings.

With the Arbitrators moving at lightning speed to issue a Final Award and Decision without any hearings, Petitioner is deprived of any opportunity to present evidence in support of Respondents' illegal spying, hacking and surveillance.

49. These unexplained violations of both Petitioner's Arbitration Clause, Federal law under U.S.C.  nine (9) years, the Arbitrators have refused without any justification to advance the case to depositions of Respondents and Final Hearings to adjudicate the matter on the merits and allow Petitioner to present evidence, testimony and third-party witnesses.

The aforementioned behavior violates Federal and State protocols and Rules of Civil Procedure if an arbitrator refuses to hear material evidence or acts in a way that prejudices a party's rights, or an arbitrator denies discovery or refuses to allow key testimony, a party may argue misconduct under this provision. Similarly, misconduct exists if the arbitrator rules beyond the authority granted by the arbitration agreement. Moreover, the conduct constitutes inarguable

breaches of the AAA's Due Process Employment Arbitration Rules, which ensure "fairness, neutrality, and due process in arbitration proceedings".

Key principles include:

- Neutral Arbitrators – Arbitrators must be impartial and free from conflicts of interest.
- Adequate Notice & Opportunity to Be Heard – Parties must have a fair chance to present their case, submit evidence, and respond to the opposing party.
- Reasonable Costs & Accessibility – Fees should not be prohibitive, and cost-sharing provisions should be fair, especially in consumer and employment cases.
- Right to Representation – Parties may be represented by legal counsel or another representative of their choice.
- Fair Discovery Process – The arbitration process must allow for reasonable exchange of information to ensure both parties can adequately prepare their case.
- Written Decisions – In many cases, arbitrators are required to provide a written explanation of their decision to ensure transparency.
- Unfair Restrictions on Remedies – Arbitrators must be able to grant relief comparable to what a court could provide.

> The Arbitrators are in violation of the above-referenced rules.

The Arbitrators have ordered to force Petitioner to execute an illegal Non-Disclosure Agreement at the behest of Respondents unlawfully guaranteeing her eternal silence. Petitioner has refused given changes in both New York State and Federal Law making such an order an example of arbitrators exceeding their authority. Further, despite Petitioner offering solutions to easily remedy any dispute to advance the case, the Arbitrators have either ignored Petitioner's proposals (such as a narrowly-tailored protective order), run interference preventing the Parties from having to engage and resolve their disputes, or refused to assist in the resolution of Party disputes on Respondents' behalf. This has allowed Respondents to incessantly weaponize a manufactured 'dispute' that could, and should be, easily resolved between the Parties or via the Arbitrators so the case can proceed to final adjudication under the Rules that govern Employment Actions.

50. It must be noted that Petitioner's lack of signing an illegal NDA is the basis for

Respondent's Motion to Dismiss her case. The second claim is that Petitioner has failed to provide / turn over responsive information from her Fox-issued BlackBerry that is not in her custody or control. The BlackBerry was not only proven to be wiped by Respondents via four forensic examinations (and Respondents conceded to same), but all responsive information from the device is in Respondent's custody and control, not Petitioner. **(6)**

On November 11, 2021, prior to oral argument of Respondents' *fifth*, frivolous Motion to Dismiss, Petitioner requested equal opportunity to refile Renewed Motions for Summary Judgement and Dismissal of Respondent's counterclaim and were moving to Final Award by February 7, 2025. They made no mention of Petitioner's Motions for Summary Judgment and

Dismissal of Respondents' counterclaim. Petitioner has sent two letters on January 20, 2025 and January 28, 2025 respectively requesting the Arbitrators adhere to their contractually-required duty to issue opinions on why Petitioner's Motions and request for an immediate hearing were summarily ignored / rejected.  The Arbitrators have again ignored both their contractual obligations and Petitioner's requests without any further explanation (**Exhibit #13 – 1.28.25 Letter to Arbitrators Regarding Clarification on Order of 1.17.25 Moving to Final Award Absent Depositions and Hearings"**).

---

**(6) Per the Arbitrators Order following Motions to Compel, Respondents were required to produce all documents regarding complaints of sexual harassment, retaliation and hostile workplace made by Petitioner's female colleagues and investigations surrounding same. Oddly, the Arbitrators have handed Respondents another 'pass' by maintaining they do not have turn over this critical information to Petitioner. The decision is even more significant as Petitioner submitted an affidavit of incidences where she witnessed first-hand sexual harassment, misconduct, abuse, retaliation and examples of hostile workplace conduct by male employees and executives of Fox toward a number of her female co-workers.**

51. The arbitration has been held with a lack of both clarity and requisite transparency. The AAA has shown a pattern of concealing and depriving information from Petitioner, including failing to disclose to Petitioner the Arbitration Panel had been dissolved for over thirty (30) months as cited prior. On July 6, 2025, Gomez responded to Petitioner's communication by stating "Good afternoon. Under a separate cover, we are forwarding the enclosed to the *arbitrator (Emphasis added).* Petitioner immediately followed-up with a letter requesting written clarification that the three-member Panel was still in tact. Gomez provided no response. Petitioner subsequently followed-up with a communication directly to the Arbitrators on January 20, 2025 regarding their decision to ignore her most recent motions, close the record, and move to a Final Award and Decision no later than February 7, 2025 without a contractually-required accompanying written opinion. Petitioner also inquired about the status of a full, three member Panel given the history of Arbitrators departing with no notice to Petitioner. No response was received. Petitioner sent a third letter on January 28, 2025 requesting the same required, written response. Arbitrator Edelman singularly replied by stating "The Chair was granted authority to issue decisions on behalf of the Panel without getting all of their signatures."

The above-referenced position is yet another example of both procedural misconduct and a violation of Petitioner's Arbitration Clause.

D. **The AAA Has Unconscionably and Errantly Billed Petitioner For 50% of The Arbitration Costs Saddling Her With Years of Financial Hardship**

52. Respondent's filed the Demand for Arbitration on May 11, 2016 under the Employment Rules and Guidelines. On August 9, 2016 the AAA sent a letter to all Parties stating it was imposing a Commercial Fee Schedule to an Employment action without any supporting opinion to warrant this erroneous decision. The AAA cannot arbitrarily determine to impose a Commercial Fee Schedule on an Employer v. Employee Action per their own Rules, or without a contractual basis for doing so. Rather, The AAA has a duty to determine if the dispute arises between Employer and Employee subject to binding documentation at the outset of the Demand for Arbitration. Absent any agreement between the Parties to split fees, the AAA must impose

the Employment Rules and Employment Fee Schedule to disputes clearly between Employer and Employee. This case clearly constitutes these stated guidelines of the Employment Rules and accompanying Fee Schedule. The Employment Agreement between the Parties not does contain any cost-sharing or fee splitting language. Under the AAA Rules, rather than properly recognize that the dispute arose out of an employment relationship, and thus was subject to the Employment/Workplace Fee Schedule, AAA incorrectly determined that the Commercial Fee Schedule governs this dispute. AAA's Commercial Rules provide that "AAA will apply the Employment Fee Schedule to any dispute between an individual employee . . . (working or performing as an individual and not incorporated) and a business or organization . . . [where] the dispute involves work or work-related claims, including any statutory claims and including work-related claims under independent contractor agreements." Am. Arb. Assoc., Commercial Arbitration Rules and Mediation Procedures Including Procedures for Large Commercial Disputes, at 10. AAA's inclusion of this provision in its Commercial Rules clearly reflects AAA's intent to limit employers' ability to gain an unfair tactical advantage against a less-resourced individual defending or bringing claims. AAA's Employment/Workplace Fee Schedule caps an individual's administrative filing fee at $300 for both single-arbitrator disputes and three-arbitrator panel disputes where the employee is bringing the claim, and requires the employer to bear other costs associated with the arbitration, unless the parties agree otherwise post-dispute. (AAA Employment/Workplace Fee Schedule, (Nov. 1, 2020) at 5. Under this fee schedule, there are no filing fees charged for a counterclaim. Id at 2, 4.

Further, to ensure fairness given the widely divergent resources of an individual versus a company or organization, the Employment/Workplace Fee Schedule places responsibility for arbitrator compensation on the company, unless the individual voluntarily elects to pay a portion of the costs, post-dispute. Arbitrator compensation is not subject to reallocation upon a determination in the matter unless the arbitrators determine that a claim was filed for the purposes of harassment or is patently frivolous.

Despite these clear rules, AAA has charged Petitioner for filing fees and 50% of the ongoing arbitration costs. Incredibly, Petitioner paid $40,000 in AAA filing fees, in addition to the $13,000 administrative fee for her counterclaims of sexual harassment, retaliation, hostile workplace, tortious interference and intentional infliction of emotional distress.

The $13,000 fee itself is more than thirty-seven (37) times the amount for commencing a federal court action and more than 60 times the amount required to commence a state court action. Before any hearing on the matter, Petitioner's filing fees and portion of the arbitration costs already exceed $150,000. Such exorbitant arbitration expenses have imposed a serious financial hardship on her and have materially interfered with the vindication of her rights.

53. From July 2019 – August 22, 2022, Case Manager Gomez sent Petitioner monthly invoices in the amount of $79,250.00 despite concealing that no full Panel existed or was conducting any work.

On November 19, 2023, Case Manager Gomez sent an email to all Parties demanding additional payment of $20,500, instead of $79,520.00, from each of the seven parties in deposits for additional 'arbitrator compensation' without identifying the specific work justifying the amount and an additional $40,500 on October 1, 2024 (**Exhibit #14 - AAA Fee Invoices to Petitioner"**).

On December 9, 2023, Gomez alerted Petitioner of imminent termination of her case, "on December 19, 2023, we will advise the the arbitrators of the amounts on deposit and pursuant to the Rules, the arbitrators may decide to suspend or terminate this proceeding should any deposits remain outstanding." Petitioner has alerted the AAA to its errant decision in violation of the Rules on December 23, 2023.

On February 12, 2024, Arbitrator Howard Edelman issued an Order stating that all future

fees would be covered by Respondents and that Petitioner should only be charged

$300.00 (**Exhibit #15 - 2-12-24 Panel Order Switching to Employment Fee Schedule**).

Petitioner replied requesting a rightful refund of the monies she has paid per the order, less $300.

Her correspondence was ignored and no monies have been returned to her to date.

## II. The Arbitration Clause Is Unenforceable

### A.  Respondents Have Materially Breached The Arbitration Clause

54. Respondents Elizabeth Ailes, on behalf The Estate of Roger Ailes ("The Estate")

Materially Breached the Arbitration Clause rendering the clause unenforceable. The clause

states: "Breach of confidentiality by any party shall be considered a breach considered to be a

material breach of this Agreement." In December 2017, the Estate of Roger Ailes ("The Estate")

was added by Order of the Arbitrators to this action without objection from any Party. On May 1,

2018, the Estate filed an ultimately unsuccessful Petition to Permanently Stay the Arbitration

with respect to The Estate in New York Supreme Court (See: *The Estate of Roger Ailes v. Andrea

Tantaros*, N.Y. Sup. Ct. (2018). The Estate failed to file confidential information pertaining to the

arbitration under seal materially breaching Arbitration Clause. Petitioner's counsel alerted the

Arbitrators to this material breach in writing. The Arbitrators issued no response, penalties or

other relief addressing the material breach that renders the Arbitration Clause unenforceable. On

August 15, 2024, the Arbitrators dismissed the Ailes Estate from the Arbitration citing that the

Estate had dissolved itself. It is beyond the pale to unilaterally dissolve an entity during litigation

and be granted dismissal.

Immediately following receipt of the correspondence, Respondents disingenuously filed

their first, frivolous Motion to Dismiss Petitioner's Case in its entirety citing

no concrete foundation warranting such relief. Rather, Respondents resorted to personal,

defamatory attacks, her change of counsel (despite Respondents incessant switching of law

firms), cited Petitioner's personal refusal to execute an unlawful NDA and an alleged failure to

conduct a fifth round of forensic examination of her two electronic devices

neither in her custody or control. (7)

The first, a work Blackberry that Respondents conceded to 'wiping' on April 25, 2016 to

preclude Petitioner from access to critical evidence, documents, texts, photos and other

information in support of her case. All responsive critical case data, supporting evidence and

information from that device is, and always has been, in Respondents custody and control as they

are network administrators of the BlackBerry. The server is located at Fox Headquarters in New

York.

(7) Multiple forensic examinations and reports by Cycura, Inc., a cybersecurity firm based in Toronto, Canada found Fox News had illegally accessed and hacked both devices. Further, a four-year Investigation by New York's Commission on Human Rights charged Fox News Network released on June 23, 2021 with guilt for pervasive sexual harassment, abuse, retaliation, fostering a hostile workplace, stopping on-air personalities appearances' appearances, conducting public campaigns to discredit employees by insisting their complaints were "manufactured" or asserted for personal gain. Victims of Fox's retaliation for complaining about harassment are blacklisted to prevent them from obtaining work with other employers in journalism. Fox has also required its employees to arbitrate any employment dispute. Fox has inserted such arbitration clauses into employment contracts to prevent employees lawsuits, including lawsuits for sexual harassment and discrimination. Fox News has also been found guilty of "erasing valuable computer data of women who complained orally or in writing, failing to responsibly preserve such data, otherwise manipulating computer systems of those who complained (emphasis added). These findings of guilt corroborate each cause of action filed against Respondents by Petitioner" (See: "NYCCHR Report v. Fox News Network" in Petitioner's Memorandum of Law).

**B. Fox Must Allow Any On-Air Personality To File Any Claim Brought Under NYC Human Rights Law Which Exempts Such Claims From The Mandatory Arbitration Clause In Fox Employment Contracts**

55. As cited prior, The New York Commission on Human Rights ("The NYCCHR") found Respondents guilty of pervasive sexual harassment, retaliation, fostering a hostile workplace, stopping on-air personalities appearances' appearances, conducting public campaigns to discredit employees by insisting their complaints were "manufactured" or asserted for personal gain, and "erasing valuable computer data of women who complained orally or in writing, failing to responsibly preserve such data, otherwise manipulating computer systems of those who complained. Subsequently Respondent Fox News Network, LLC was forced to pay the largest fine in the Commission's history and subject to a four-year probation that states "modification of mandatory arbitration clauses to exclude claims brought under New York City Human Rights Law… will allow for employees, talent and contributors to bring claims of sexual harassment and retaliation to an outside venue, which in turn removes the secrecy of such claims. *Under this agreement, for a period of four years, Fox must allow any employee, contributor or on-air personality to file any claim brought under NYC Human Rights Law in court or administratively, exempting such claims from the mandatory arbitration clause in Fox employment contracts"* (**Exhibit #16 - "6.29.21 NYCCHR Press Release and NYCCHR Investigative Report of Fox News and Findings of Guilt"**).

**C. The Arbitrators and the AAA Have Materially Breached The Arbitration Clause**

56. The Arbitration Clause of Petitioner's Employment Agreement explicitly states that Arbitrators must be "mutually selected" (*emphasis added*). The AAA has been complicit in preventing Petitioner from having an equitable opportunity to select unbiased Arbitrators. On or around March 20, 2023 following the District Court remand of the case back to arbitration

(*Tantaros v. Fox News Network, LLC et al,* S.D.N.Y. (2019) (2), AAA Case Manager Gomez informed Petitioner that the Panel has been dissolved with two of the three arbitrators allegedly retiring in 2021. On March 14, 2023 Respondent filed their second Motion to Dismiss Petitioner's claims. It was only upon Petitioner's communication that included two former Arbitrators that the issues of their departure was disclosed. The AAA then informed her of their departure two weeks later.

Absent Petitioner's correspondence, the AAA was planning of adjudicating Respondent's Motion to Dismiss her entire case arbitrarily and without a three-member Panel. For 2.5 years (over 30 months) the AAA misled Petitioner that a three-member group of Arbitrators were empaneled.

During this period, Petitioner was inundated with invoices for Arbitrator work performed and asked for monthly status updates from a Panel of Arbitrators that did not exist. The AAA has a duty under under its own Rules to maintain transparency regarding proceedings. (AAA Rules 15-19 Regarding Arbitrator Transparency, Impartiality and Disqualification). The Parties agreed to one arbitrator replacement, Loretta M. Gatswirth ("Gatswirth"). The third Arbitrator, Michael G. Berger ("Berger") was appointed by the AAA and not mutually-selected in violation of Petitioner's Arbitration Clause. Petitioner objected to Berger's confirmation by the AAA formally through a Motion to Recuse submitted on July 13, 2024. The AAA Administration refused to even consider or acknowledge the Motion. Three days following, the AAA announced the mutually-selected, and sole female arbitrator was terminated. The AAA arbitrarily chose Dennis M. Cavanaugh to replace Gatswirth without consulting the Parties in violation of Petitioner's Arbitration Clause.

### D. Fox News Was In Material Breach of Petitioner's Employment Contract For Nineteen Months Prior to Initiating Arbitration

59. Petitioner entered into her third Employment Agreement with Fox on August 17, 2014. Provision  of Petitioner's Employment Agreement required Fox to provide a personal assistant to Petitioner. Fox was notified both orally and writing by Petitioner, her agent and her

entertainment attorney that Fox was in material breach of contract. Specifically, in a letter dated March 13, 2016, Counsel for Petitioner alerted Brandi that Fox was in breach of contract for nineteen (19) months and failed to make any effort to cure the breach. The breach nullified Petitioner's Employment Agreement and subsequent provisions therein, including the Arbitration Clause.

### E.  Petitioner's Arbitration Clause Was Executed Under Duress

60. During negotiations between Petitioner and Fox to renegotiate the third Employment Agreement, Fox attached and incorporated "Standard Terms and Conditions." These Standard Terms and Conditions were not negotiable. The Standard Terms and Conditions included a mandatory arbitration clause. During the time which Petitioner was renegotiating her contract, Ailes continued to sexually harass and retaliate against Petitioner for her protected complaints, staunch refusals to engage in sexual conduct and rebuffing of Ailes' sexual misconduct during on-one-one meetings in his office.**(8)**

With no leverage to negotiate the Standard Terms and Conditions, and a regular and intimidating oral reminder by Ailes that "everyone is replaceable", Petitioner executed the Employment Agreement. This underscores that "if the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof" (1.9 U.S.C. § 2).

**(8) In nine years this fact has never been presented or heard by any court or judicial tribunal for consideration of the Arbitration Clause's enforceability. Only until mere weeks ago, upon Petitioner's scrutiny of the facts of this case and controlling law, with the oversight of counsel, Petitioner discovered, among other things, the Arbitration Clause is unenforceable and that the arbitrators have violated Federal and State law and the Rules that govern arbitration.**

∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙

For the aforementioned reasons the Arbitration Clause in Petitioner's Arbitration Clause is unenforceable further justifying an Emergency TRO/Permanent Injunction to Stay the Arbitration and allow proceedings to proceed in court.

## LEGAL STANDARD

61. Petitioner re-alleges in paragraphs 1-60 herein. The FAA, 9 U.S.C. § 1–16, provides grounds for judicial intervention when arbitration proceedings are conducted unfairly or outside the terms of the arbitration agreement. 9 U.S.C. Section § 4 provides that a party may seek judicial intervention if there is a dispute over whether an agreement to arbitrate exists.

9 U.S.C. Section (§ 10) justifies judicial intervention in cases of fraud, undue influence, or other reasons that could make the arbitration agreement unenforceable or there is misconduct by arbitrators, bias, or actions that violate due process (§ 10).

Rule 65 of the Federal Rules of Civil Procedure a party can seek a TRO under which requires a likelihood of success on the merits, irreparable harm if arbitration proceeds and the balance of hardships favoring the moving party.

Judicial intervention is necessary to prevent irreparable harm to Petitioner, as the arbitration process has become fundamentally and procedurally flawed, mired by Arbitrator bias and misconduct and will cause significant prejudice and irreparable harm to Petitioner if allowed to continue and issue a Final Award and Decision by February 7, 2025 without depositions, final hearings, testimony, submission of evidence regarding damages and a fair chance to present her case, submit evidence on the merits and respond to the opposing party. Petitioner's likelihood of succeeding on the merits is great given myriad violations of Federal Law, AAA Rules and Guidelines and imminent harm to Petitioner absent emergency judicial intervention and review.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Court grant her Order to Show Cause

for an Emergency Temporary Restraining Order (TRO) Staying the Arbitration and Permanent

Injunction to enjoin the arbitration proceedings between Petitioner and Respondent; address the

procedural, legal and flaws in the arbitration process; Declare the arbitration clause

unenforceable; and grant any other relief the Court deems just and proper.


Respectfully submitted,


Andrea K. Tantaros, *Petitioner*

Date: February 3, 2025


Andrea K. Tantaros

320A West 12th Street, Suite 120

New York, NY 10014

917.923.5160

andreanaktantaros@tutanota.com