**UNITED STATES U.S. DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

ANDREA K. TANTAROS,

         *Petitioner*,

   -against-

FOX NEWS NETWORK, LLC, SUZANNE
SCOTT, IRENA BRIGANTI, DIANNE
BRANDI, WILLIAM SHINE, ELIZABETH
AILES ON BEHALF OF THE ESTATE OF
ROGER AILES,

        *Respondents*.

---

INDEX NO. 1:25-CV-00961

**<u>MEMORANDUM OF LAW OF FOX NEWS NETWORK, LLC, SUZANNE SCOTT,
IRENA BRIGANTI, AND DIANNE BRANDI IN SUPPORT OF MOTION TO
DISMISS PETITION OF ANDREA K. TANTAROS AND IN OPPOSITION TO
PETITIONER'S REQUEST FOR TEMPORARY RESTRAINING ORDER</u>**

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.    FACTUAL BACKGROUND.............................................................................. 2

III.    LEGAL STANDARD.......................................................................................... 5

IV.    ARGUMENT ....................................................................................................... 7

    A.    Petitioner has not shown that she will suffer irreparable harm in the absence of a TRO............................................................................................ 7

    B.    Petitioner cannot establish a likelihood of success on the merits. ......................... 8

        1.    Petitioner's challenges to the pending arbitration are premature............... 8

        2.    Petitioner's challenges to the Arbitration Clause are barred by res judicata............................................................................................ 10

    C.    The Petition should be dismissed with prejudice................................................... 14

V.    CONCLUSION.................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                      **Page(s)**

*Ahmad v. Long Island Univ.*,
   18 F. Supp. 2d 245 (E.D.N.Y. 1998) ................................................................................1, 6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).........................................................................................................6

*Aviall, Inc. v. Ryder Sys., Inc.*,
   110 F.3d 892 (2d Cir. 1997).............................................................................................8

*Begonja v. Vornado Realty Tr.*,
   159 F. Supp. 3d 402 (S.D.N.Y. 2016)..............................................................................9

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007).........................................................................................................6

*Bragg v. Jordan*,
   669 F. Supp. 3d 257 (S.D.N.Y. 2023), *appeal dismissed sub nom. Bragg v.*
   *Pomerantz*, Nos. 23-615(L), 23-616(Con), 2023 WL 4612976 (2d Cir. Apr.
   24, 2023) .....................................................................................................................5, 6

*Buckeye Check Cashing, Inc. v. Cardegna*,
   546 U.S. 440 (2006).......................................................................................................12

*Commissioner v. Sunnen*,
   333 U.S. 591 (1948).......................................................................................................10

*Corey v. New York Stock Exch.*,
   691 F.2d 1205 (6th Cir. 1982) .........................................................................................9

*Epperson v. Entm't Express, Inc.*,
   242 F.3d 100 (2d Cir. 2001)...........................................................................................10

*Florasynth, Inc. v. Pickholz*,
   750 F.2d 171 (2d Cir. 1984)............................................................................................8

*Free Country Ltd v. Drennen*,
   235 F. Supp. 3d 559 (S.D.N.Y. 2016).....................................................................5, 6, 7, 8

*Gomez v. MLB Enterprises, Corp.*,
   No. 15-CV-3326(CM), 2018 WL 3019102 (S.D.N.Y. June 5, 2018) .....................................13

*Havensight Cap., LLC v. Facebook, Inc.*,
   No. CV 17-6727 FMO(MRWx), 2018 WL 6340757  (C.D. Cal. Sept. 24,
   2018), *aff'd*, 776 F. App'x 420 (9th Cir. 2019) .........................................................14

*Int'l Bhd. of Elec. Workers, AFL-CIO, Loc. Union No. 3 v. Charter Commc'ns, Inc.*,
   277 F. Supp. 3d 356 (E.D.N.Y. 2017) ................................................................... 7

*JBR, Inc. v. Keurig Green Mountain, Inc.*,
   618 F. App'x 31 (2d Cir. 2015) ........................................................................... 6

*Kumaran v. ADM Inv. Servs., Inc.*,
   No. 1:20-CV-03873(GHW)(SDA), 2021 WL 2333645 (S.D.N.Y. June 7, 2021) ................................................................................................................... 12

*Marillo v. Shearson Hayden Stone, Inc.*,
   No. Civ-81-522E, 1983 WL 1301 (W.D.N.Y. Mar. 14, 1983) ............................. 13

*Michaels v. Mariforum Shipping, S.A.*,
   624 F.2d 411 (2d Cir. 1980) ........................................................................... 8, 9

*Murphy v. Gallagher*,
   761 F.2d 878 (2d Cir. 1985) ............................................................................. 10

*Oneida Nation of New York v. Cuomo*,
   645 F.3d 154 (2d Cir. 2011) ............................................................................... 6

*Overview Books, LLC v. United States*,
   755 F. Supp. 2d 409 (E.D.N.Y. 2010), *aff'd*, 438 F. App'x 31 (2d Cir. 2011) ................. 10, 12

*Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE*,
   763 F.3d 198 (2d Cir. 2014) ............................................................................... 6

*PK Time Grp., LLC v. Robert*,
   No. 12 CIV. 8200 (PAC), 2013 WL 3833084 (S.D.N.Y. July 23, 2013) ................. 9

*Rennaker Co. Consulting, Inc. v. TLM Grp., LLC*,
   No. 16 CIV. 3787 (DAB), 2017 WL 2304302 (S.D.N.Y. May 18, 2017) ............. 13

*Rodriguez ex rel. Rodriguez v. DeBuono*,
   175 F.3d 227 (2d Cir. 1999) ............................................................................... 7

*Sampson v. Murray*,
   415 U.S. 61 (1974) ............................................................................................ 7

*SH Tankers Ltd. v. Koch Shipping Inc.*,
   No. 12 CIV. 00375 (AJN), 2012 WL 2357314 (S.D.N.Y. June 19, 2012) ............. 9

*Sorkin v. Devore Assocs., LLC*,
   No. 09-CV-2659 (CS), 2010 WL 11526766 (S.D.N.Y. Feb. 1, 2010), *aff'd*, 406 F. App'x 522 (2d Cir. 2011) ................................................................... 13

*Tamari v. Bache & Co. (Lebanon) S. A. L.*,
    565 F.2d 1194 (7th Cir. 1977) ..................................................................................9

*Truong v. Cuthbertson*,
    No. 15-CV-4268 (DLI)(LB), 2015 WL 4771852 (E.D.N.Y. Aug. 12, 2015),
    *modified on reconsideration*, No. 15-CV-4268(DLI)(LB), 2016 WL 737907
    (E.D.N.Y. Feb. 22, 2016) ........................................................................................14

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ....................................................................................................5

*Women for Am. First v. de Blasio*,
    520 F. Supp. 3d 532 (S.D.N.Y. 2021), *aff'd sub nom. Women for Am. First v.
    Adams*, No. 21-485-CV, 2022 WL 1714896 (2d Cir. May 27, 2022) ...............6, 14

**Statutes**

9 U.S.C. § 10 ..................................................................................................................9

I.    **<u>INTRODUCTION</u>**

Petitioner Andrea K. Tantaros asks this Court for "emergency" relief from an arbitration that she concedes has been pending for nine years. This is not the first time Petitioner has sought to stymie the contractually required arbitration of her disputes with the Fox Parties: twice she has asked courts to find her agreement to arbitrate unenforceable, and both times the courts rejected her arguments and compelled her claims to arbitration. Now, Petitioner asks this Court for a third bite at the apple, seemingly in a last-ditch effort to avoid an unfavorable final arbitral award. The Court should not entertain her vexatious Petition.

It is clear from the face of the Petition that Petitioner is not entitled to the extraordinary remedy of a temporary restraining order, nor any other relief she may seek. First, Petitioner has failed altogether to make a showing of irreparable harm that will result in the absence of a temporary restraining order—the "single most important requirement" for the entry of a TRO. *See infra* Section III (citing *Ahmad v. Long Island Univ.*, 18 F. Supp. 2d 245, 247 (E.D.N.Y. 1998)). Petitioner's mere recitation of the element of irreparable harm is wholly conclusory, unsupported, and insufficient to grant her request. *See infra* Section IV(A).

Second, Petitioner cannot establish a likelihood of success on the merits for two independent reasons: (1) her challenges to the ongoing arbitration proceedings are premature, and (2) her challenges to the enforceability of her agreement to arbitrate are barred by *res judicata*. *See infra* Section IV(B)(1)-(2). Because of these insurmountable legal roadblocks, Petitioner cannot establish a likelihood of success on the merits, and it is evident that the Petition fails to state a claim upon which relief may be granted and should be dismissed with prejudice. *See infra* Section IV(B)(3).

1

For all of the reasons stated herein, the Fox Parties respectfully request the Court deny Petitioner's request for a temporary restraining order and dismiss her Petition in its entirety with prejudice.

## II.    **FACTUAL BACKGROUND**

The background of the nine-year legal saga between the Fox Parties and Petitioner is longer and more tortured than even the 35-page Petition lets on.   But the facts relevant to denying Petitioner's request for a temporary restraining order and granting the Fox Parties' Motion to Dismiss are simple: (1) Petitioner signed an employment agreement with Fox News that included an agreement to arbitrate any claims arising out of her employment with Fox News, (2) two courts have already ruled that the arbitration clause is enforceable and that the parties must arbitrate their disputes, and (3) the arbitration is ongoing and no final award has been rendered.   *See* Declaration of Paul Evans ("Evans Decl."), ¶¶ 2-5, 8-10, 17.   For the Court's benefit, the Fox Parties provide a brief history of these facts below.

In September 2014, Petitioner, then an employee of Fox News, signed an agreement to arbitrate any claims arising out of her employment with Fox News.   Evans Decl. ¶ 3, Ex. 1.   That agreement provided for mandatory arbitration of "[a]ny controversy, claim or dispute arising out of or relating to [the Employment Agreement] or [Petitioner's] employment" with Fox News (the "Arbitration Clause").   *Id.*

On August 22, 2016, in contravention of the Arbitration Clause, Petitioner filed a complaint in the Supreme Court of New York against the Fox Parties alleging workplace sexual harassment and retaliation.   *See Tantaros v. Fox News Network, LLC*, Index No. 157054/2016 (Sup. Ct. N.Y. Cnty, 2016) ("*Tantaros I*"); *see also* Evans Decl. ¶ 2.   The Fox Parties moved to compel arbitration.   Evans Decl. ¶ 3.   Petitioner opposed, arguing that the Arbitration Clause was unenforceable because, among other reasons, she alleged Fox News had materially breached her

employment agreement and her claims were not subject to arbitration. *Id.* ¶ 4, Ex. 2. The *Tantaros I* court rejected Petitioner's challenge to the enforceability of the Arbitration Clause, held the Arbitration Clause enforceable, granted the Fox Parties' motion, and disposed of the matter. *Id.* ¶¶ 5-6. Petitioner initially filed a Notice of Appeal but failed to pursue it. Evans Decl. ¶ 6, Ex. 3. Consistent with the state court's ruling in *Tantaros I*, and as required by the enforceable Arbitration Clause, Petitioner ultimately filed her claims against the Fox Parties with the New York office of the American Arbitration Association ("AAA").[1] *Id.* ¶ 7.

On July 17, 2019, after more than two years of actively arbitrating her claims before AAA, Petitioner suddenly changed course and filed another action against the Fox Parties in the Supreme Court of New York. *Id.* ¶ 8. There, she sought a temporary restraining order and a permanent injunction staying the arbitration of her sexual harassment claims on the basis that the Arbitration Clause was unenforceable following the enactment of N.Y. C.P.L.R. § 7515. *Id.* The Fox Parties removed the action to federal court on July 30, 2019, and the matter was assigned to the Honorable Andrew L. Carter, Jr. *Tantaros v. Fox News Network, LLC, et al*, Case No. 1:19-cv-07131(ALC) (S.D.N.Y. 2019) ("*Tantaros II*"); *see also* Evans Decl. ¶ 9. The arbitration was stayed during the pendency of *Tantaros II*. Evans Decl. ¶ 9.

Petitioner moved to remand, Judge Carter denied her motion, and then she appealed the remand ruling to the Second Circuit and lost in that court. *Tantaros II*, ECF Nos. 10, 40, 88. After her loss in the Second Circuit, the Fox Parties moved to dismiss Petitioner's petition on the basis that CPLR § 7515 was preempted by the Federal Arbitration Act and otherwise inapplicable to her

---

[1] Petitioner asserted her claims as counterclaims in an arbitration Fox News had previously filed against her in May 2016 for breach of contract, AAA case number 01-16-0001-7288. *Id.* ¶ 7.

claims.[2]  *Tantaros II*, ECF No. 100; *see also* Evans Decl. ¶ 10.  In her opposition to the motion to dismiss, Petitioner explicitly argued that "[e]ven if CPLR § 7515(b)(iii) does not apply, the arbitration provision is unenforceable because it is unreasonable and unconscionable" and denies her due process.  *Tantaros II*, ECF No. 114 at 15.  In doing so, Petitioner asserted many of the same arguments she asserts yet again in her current Petition, including:

(a)    that her execution of the arbitration clause after being subjected to alleged harassment and retaliation evidenced coercion rendering it unenforceable (*id.* at 18);

(b)    that the confidentiality of the arbitration "is an effect [sic] a universal gag order" and that the confidentiality stipulation the arbitration panel has ordered her to sign rendered her arbitration agreement substantively unconscionable (*id.* at 19); and

(c)    that she was being denied due process in the arbitration due to (i) "exorbitant fees" she alleges she was required to pay in the arbitration,[3] (ii) the panel's restrictions on the discovery she can take of the Fox Parties, (iii) the panel's rejection of her arguments regarding spoliation of evidence and the alleged failure of Fox News to issue litigation holds, (iv) the failure of the panel to issue "full written opinion[s]," (v) the requirement that she sign the confidentiality order that she still refuses to sign in the arbitration, and (vi) the panel's decision not to allow her to schedule depositions or hearing dates in light of her discovery misconduct (*id.* at 21-23).

On September 30, 2022, Judge Carter granted the Fox Parties' motion to dismiss, holding that CPLR § 7515 was preempted by the Federal Arbitration Act and that Petitioner's claims were

---

[2] Respondent William Shine joined in the Fox Parties' motion to dismiss and accompanying memorandum of law.

[3] As noted in the Petition (at 28), on February 12, 2024, the Arbitration Panel issued an order requiring all future fees to be paid by the Fox Parties.  To the Fox Parties' knowledge, Petitioner has not been assessed any fees by AAA since that time.

properly in arbitration. *Tantaros II*, ECF No. 140.  In so holding, Judge Carter expressly rejected Petitioner's "remaining arguments"—which included her arguments that the Arbitration Clause was unenforceable and unconscionable and denied her due process—finding them to be "without merit." *Id.* at n.1.  Following Judge Carter's decision, Petitioner's then-counsel (the tenth and last in a long line of counsel for Petitioner in this saga) withdrew from representing Petitioner, and she has represented herself ever since. *Tantaros II*, ECF No. 143; Evans Decl. ¶¶ 14-15.

After the stay in the arbitration was lifted, the panel eventually permitted Fox News to renew its motion to dismiss Ms. Tantaros' counterclaims.  Evans Decl. ¶¶ 11, 12.  The panel also allowed Petitioner to renew her motion for summary judgment. *Id.* ¶ 12.  On January 17, 2025, the panel indicated that it planned to issue a ruling by February 7, 2025. *Id.* ¶ 13.  On February 3, 2025, four days before the panel's self-imposed deadline, Petitioner initiated this action, and then filed an amended Petition the following day, seeking judicial intervention to prevent the panel's issuance of an award.  Doc. 1, 6.  On February 7, the arbitration panel issued an interim order on the parties' cross-dispositive motions.  Evans Decl. ¶ 16.  To date, the panel has not issued a final award, and the arbitration proceedings remain ongoing. *Id.* ¶ 17.

## III.  <u>LEGAL STANDARD</u>

"[A] temporary restraining order is 'an extraordinary remedy never awarded as of right.'" *Bragg v. Jordan*, 669 F. Supp. 3d 257, 267 (S.D.N.Y. 2023), *appeal dismissed sub nom. Bragg v. Pomerantz*, Nos. 23-615(L), 23-616(Con), 2023 WL 4612976 (2d Cir. Apr. 24, 2023) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)).  While the standard for entry of a TRO is "essentially the same" as for a preliminary injunction, "a TRO, perhaps even more so than a preliminary injunction, is an 'extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Free Country Ltd v. Drennen*, 235 F. Supp. 3d 559, 565 (S.D.N.Y. 2016) (citing *JBR, Inc. v. Keurig Green Mountain,*

*Inc.*, 618 F. App'x 31, 33 (2d Cir. 2015)).  The party seeking a TRO "must typically show four elements: (1) a likelihood of success on the ultimate merits of the lawsuit; (2) a likelihood that the moving party will suffer irreparable harm if a TRO is not granted; (3) that the balance of hardships tips in the moving party's favor; and (4) that the public interest is not disserved by the relief granted."  *Id.*  "A showing of irreparable harm is considered the 'single most important requirement' in satisfying the standard."  *Ahmad*, 18 F. Supp. 2d at 247.  "Where a party seeking a temporary restraining order fails to establish a likelihood of success on the merits, 'there is no need to address the other prongs of the analysis.'"  *Bragg*, 669 F. Supp. 3d at 267 (quoting *Oneida Nation of New York v. Cuomo*, 645 F.3d 154, 164 (2d Cir. 2011)).

"Although a plaintiff must make a stronger showing of success on the merits to obtain [injunctive relief] than to survive a motion to dismiss," dismissal may also be appropriate where the movant has failed to state a claim.  *Women for Am. First v. de Blasio*, 520 F. Supp. 3d 532, 549 (S.D.N.Y. 2021) (denying motion for TRO and granting motion to dismiss), *aff'd sub nom. Women for Am. First v. Adams*, No. 21-485-CV, 2022 WL 1714896 (2d Cir. May 27, 2022).  To survive a Rule 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In assessing the sufficiency of a pleading, a court must disregard legal conclusions, which are not entitled to the presumption of truth.  *Id.*  "Dismissal is appropriate when it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law."  *Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 208–09 (2d Cir. 2014) (internal quotations omitted).

IV.    **ARGUMENT**

    A.    **Petitioner has not shown that she will suffer irreparable harm in the absence of a TRO.**

Petitioner seeks emergency injunctive relief from arbitration proceedings in which she concedes she has been actively participating for almost a decade.  It is unclear why now, before a final arbitration award has been rendered, she believes she will suffer irreparable harm without this Court's intervention.  Petitioner merely recites the element of irreparable harm without providing anything more than a conclusory allegation that it exists.  Pet. at 2, 8, 34.  This is not enough to grant her the "extraordinary and drastic remedy" of a temporary restraining order.  *See Free Country*, 235 F. Supp. 3d at 565.

"Demonstrating irreparable harm is a prerequisite for obtaining a preliminary injunction; a party must show such harm is 'likely' before the court may address the other elements of the inquiry." *Int'l Bhd. of Elec. Workers, AFL-CIO, Loc. Union No. 3 v. Charter Commc'ns, Inc.*, 277 F. Supp. 3d 356, 363 (E.D.N.Y. 2017) (citing *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 233–34 (2d Cir. 1999)).  In a similar case seeking to enjoin an arbitration, a New York federal court denied the motion after finding the petitioner failed to demonstrate irreparable harm.  *Id.* at 365.  The court reasoned that the cost of arbitrating the dispute "on its own does not constitute irreparable injury," and that even if the arbitration award was against petitioner, the court would be "empowered to vacate arbitral awards where the 'arbitrators exceeded their powers.'" *Id.* (citations omitted.)

The same logic applies here.  Any supposed harm Petitioner might suffer from an unfavorable final arbitral award can be remedied without an injunction.  *See id.* ("Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough.") (citing *Sampson v. Murray*, 415 U.S. 61, 90 (1974)).  Petitioner has failed

altogether to demonstrate the irreparable harm necessary to grant the "extraordinary and drastic" relief she seeks. *Free Country*, 235 F. Supp. 3d at 565.

This Court has already found as much in denying Petitioner's request to expedite a ruling on her request for a temporary restraining order. ECF No. 34. As the Court correctly pointed out there, "Petitioner has not 'clearly show[n] that immediate and irreparable injury, loss, or damage will result' to her" or why the not-yet-issued final arbitral award "constitute[s] 'immediate and irreparable injury' to justify this Court's granting of an ex parte TRO request." *Id.* at 2. So, too, Petitioner has failed to show the irreparable harm necessary to entitle her to a temporary restraining order even after full briefing.

**B.    Petitioner cannot establish a likelihood of success on the merits.**

**1.    Petitioner's challenges to the pending arbitration are premature.**

Petitioner asks this Court to enjoin the arbitration proceedings based on her concerns that the proceedings are tainted by arbitrator bias, misconduct, and conflicts, that the arbitrators have exceeded their authority under the FAA, and what she characterizes as unconscionable billing practices by the AAA. Pet. Section I (pp. 11-29). However, the law is clear that such challenges to arbitration procedures are not reviewable until the conclusion of arbitration proceedings and issuance of a final award. Petitioner points to no authority for a court to intervene in arbitration proceedings at this stage. On the contrary, courts have consistently recognized that these sorts of pre-award attacks on arbitration proceedings are premature.

The Second Circuit has made this clear: "it is well established that a district court cannot entertain an attack upon the qualifications or partiality of arbitrators until after the conclusion of the arbitration and the rendition of an award." *Aviall, Inc. v. Ryder Sys., Inc.*, 110 F.3d 892, 895 (2d Cir. 1997) (citing *Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411, 414 n. 4 (2d Cir. 1980) and *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 174 (2d Cir. 1984)). The FAA (pursuant to which

Petitioner brings her Petition)[4] is also clear: 9 U.S.C. § 10(a)(3) and (a)(4) permit a court to "make an order vacating the award," not to intervene before an award is issued.  *Compare* Pet. at 14-26 (discussing these provisions of the FAA) *with* 9 U.S.C. §§ 10(a)(3), (a)(4); *see also Mariforum Shipping*, 624 F.2d at 414 ("The language of the Act is unambiguous: it is only after an award has been made by the arbitrators that a party can seek to attack any of the arbitrators' determinations in court…."); *Begonja v. Vornado Realty Tr.*, 159 F. Supp. 3d 402, 411 (S.D.N.Y. 2016) (holding petitioner's fears of interference with pursuit of claims in arbitration were "speculative and premature" before "completion of the arbitral process"); *SH Tankers Ltd. v. Koch Shipping Inc.*, No. 12 CIV. 00375 (AJN), 2012 WL 2357314, at *6 (S.D.N.Y. June 19, 2012) (dismissing petition as premature where no arbitration award had issued).

Here, Petitioner's reasons for challenging the arbitration proceedings—that the arbitrators are biased and have violated their own rules and the parties' Arbitration Clause, Pet. Section I— are entirely of the type that can only be challenged under the FAA after a final award issues.  *See PK Time Grp., LLC v. Robert*, No. 12 CIV. 8200 (PAC), 2013 WL 3833084, at *2 (S.D.N.Y. July 23, 2013) (denying petition and granting motion to dismiss based on allegations of arbitrator bias, changes in arbitration procedures, and challenges to certain non-final arbitration rulings).  Thus, as in *PK Time*, Petitioner "must proceed with arbitration and raise any objections in a motion to vacate the award."  *Id.*  (citation omitted).  Because Petitioner's challenges to the arbitration

---

[4] The FAA provides the exclusive remedy for allegations of wrongdoing (like Petitioner's here) that are within the scope of the Act.  *See Corey v. New York Stock Exch.*, 691 F.2d 1205, 1212 (6th Cir. 1982) (holding the FAA as the exclusive remedy for allegations of improper panel selection, arbitrator bias, and prejudicial adjournments of hearing dates); *Tamari v. Bache & Co. (Lebanon) S. A. L.*, 565 F.2d 1194, 1202 (7th Cir. 1977) (holding allegations of misconduct in arbitration proceedings reviewable only under Section 10 of the FAA).

proceedings are premature, she cannot establish a likelihood of success on the merits at this juncture, and her Petition should be dismissed for failure to state a claim.

### 2. Petitioner's challenges to the Arbitration Clause are barred by *res judicata*.

Petitioner also seeks an order declaring the Arbitration Clause unenforceable, Pet. Section II (pp. 29-34)—a request she has made of two other courts, both times rejected. Petitioner's challenges to the Arbitration Clause are plainly barred by *res judicata*. She therefore cannot establish a likelihood of success on the merits, and her Petition should be dismissed.

"The doctrine of *res judicata* is a bedrock principle of our legal system that 'applies to repetitious suits involving the same cause of action.'" *Overview Books, LLC v. United States*, 755 F. Supp. 2d 409, 415 (E.D.N.Y. 2010), *aff'd*, 438 F. App'x 31 (2d Cir. 2011) (citing *Commissioner v. Sunnen,* 333 U.S. 591 (1948)). "Traditionally, *res judicata* proclaims that 'a valid, final judgment, rendered on the merits, constitutes an absolute bar to a subsequent action between the same parties, or those in privity with them, upon the same claim or demand.'" *Overview Books*, 755 F. Supp. 2d at 415 (citing *Epperson v. Entm't Express, Inc.,* 242 F.3d 100, 108 (2d Cir. 2001)). "Moreover, it even 'prevents litigation of a matter that could have been raised and decided in a previous suit, whether or not it was [actually] raised.'" *Overview Books*, 755 F. Supp. 2d at 415 (citing *Murphy v. Gallagher,* 761 F.2d 878, 879 (2d Cir. 1985)).

*Res judicata* applies where "(1) the earlier decision was a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the same parties or their privies were involved; and (4) the decision involved the same cause of action." *Overview Books*, 755 F. Supp. 2d at 415. All four elements are clearly met here. The Supreme Court of New York and the Southern District of New York, both of which had competent jurisdiction to compel Petitioner's claims to arbitration, both issued final orders dismissing her challenges to the

Arbitration Clause as unenforceable.  Evans Decl. ¶¶ 5, 10.  The claims Petitioner brought in both of those court actions are identical to those she asserts here, and they were litigated among the exact same parties that are involved in this matter.  Petitioner cannot establish a likelihood of success on the merits where her claims are plainly precluded.

While not necessary for application *of res judicata*, it bears noting that Petitioner regurgitates many of the exact same arguments that one or both of those prior courts have rejected, including arguments related to unconscionability and due process.  For example, as set forth in the factual background above, in her prior actions the courts considered and rejected arguments that she attempts to relitigate in her Petition, including:

- That the Fox Parties cannot enforce the Arbitration Clause because they materially breached the agreement (*compare* Pet. at 32-33 *with* Evans Decl. ¶ 4, Ex. 2 at 16-18);

- That the fees she has been charged by AAA are excessive (*compare* Pet. at 16 *with Tantaros II*, ECF No. 114 at 21-22);

- That she allegedly executed the Arbitration Clause under duress and coercion (*compare* Pet. at 33-34 *with Tantaros II*, ECF No. 114 at 18);

- That the alleged absence of written opinions by the arbitration panel somehow renders the arbitration invalid (*compare* Pet. at 26 *with Tantaros II*, ECF No. 114 at 22);

- That the arbitration panel's requirement that she sign a confidentiality order renders the arbitration invalid (*compare* Pet. at 14-16 *with Tantaros II*, ECF No. 114 at 20, 22);

- That the arbitration panel's discovery rulings, including on her arguments about Fox News' litigation hold, spoliation of evidence, and limitations on depositions and hearing dates until she fully complies with the panel's discovery orders, reflect bias or are otherwise invalid (*compare* Pet. at 14, 16-20, 23, 25, *with Tantaros II*, ECF No. 114 at 22-23).

To the extent the Petition raises any new arguments to challenge the validity of the Arbitration Clause, they too are barred by *res judicata* because they could have been asserted in prior actions (where Tantaros was represented by counsel).[5]  *See Overview Books*, 755 F. Supp. 2d at 415.[6]  For example, Petitioner argues that Fox News' alleged failure to provide her with a personal assistant allows her to escape her obligation to arbitrate.  Pet. Section II(D).  This argument is barred by *res judicata* because it could have been raised in *Tantaros I*.  Regardless, Petitioner provides no basis for concluding that alleged breach of this unrelated provision of her employment agreement constitutes a material breach of the Arbitration Clause.  The U.S. Supreme Court has conclusively held that an arbitration provision is severable from the remainder of the contract, and that challenges such as Petitioner's that go to the validity of the contract itself are properly considered by the arbitrator in the first instance.  *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 446 (2006).

---

[5] Petitioner was represented by various sets of counsel in *Tantaros I* and *II* when she could have raised these arguments.  *See supra* n.3.

[6] Courts have also found in similar circumstances that a party has waived the right to challenge an arbitration agreement or the authority of the arbitrators by actively participating in the arbitration for years.  *See Kumaran v. ADM Inv. Servs., Inc.*, No. 1:20-CV-03873(GHW)(SDA), 2021 WL 2333645, at *5 (S.D.N.Y. June 7, 2021) (collecting authority).  As in *Kumaran*, to "allow [Petitioner] to pursue arbitration and then later, after [she] is unhappy with the way arbitration is unfolding, challenge whether [she] had ever agreed to arbitrate, would run contrary to the clear policy favoring arbitration."  *Kumaran*, 2021 WL 2333645, at *5.

Similarly, Petitioner argues that Fox News is required to allow her claims under the NYC Human Rights Law to proceed in court under a 2021 conciliation agreement.  Pet. Section II(B). Petitioner discussed the conciliation agreement at length in her opposition to the Fox Parties' motion to dismiss in *Tantaros II*, and although she did not argue at that time that the conciliation agreement precluded arbitration, this argument is clearly barred by *res judicata*.  Even if it was not, the argument does not save her claims from arbitration as the terms of that agreement between Fox News and the New York City Commission on Human Rights make clear that the exclusion of such claims from mandatory arbitration is prospective only.  *See* Evans Decl. ¶ 18, ¶ 8.

*Res judicata* not only bars Petitioner from establishing a likelihood of success on the merits, it also entitles the Fox Parties to dismissal of her Petition.  Other courts have dismissed similar attempts to relitigate the enforceability of an arbitration agreement.  *See, e.g.*, *Sorkin v. Devore Assocs., LLC*, No. 09-CV-2659 (CS), 2010 WL 11526766, at *4 (S.D.N.Y. Feb. 1, 2010) (dismissing complaint where parties had previously been compelled to arbitrate disputes), *aff'd*, 406 F. App'x 522 (2d Cir. 2011); *Marillo v. Shearson Hayden Stone, Inc.*, No. Civ-81-522E, 1983 WL 1301, at *2 (W.D.N.Y. Mar. 14, 1983) (dismissing complaint where state court previously held contract required parties to arbitrate).  The Court should reach the same result here.[7]

---

[7] Petitioner also argues that the Arbitration Clause is unenforceable because (1) the Estate—which was added to the arbitration proceedings in 2017 and dismissed in August 2024 following its dissolution—materially breached the Arbitration Clause by failing to file confidential information pertaining to the arbitration under seal in a state court proceeding (Pet. Section II(A)); and (2) AAA itself has breached the Arbitration Clause by failing to abide by its own rules and the arbitrator selection provisions of the clause (Pet. Section II(C)).  Even assuming *arguendo* the Estate or AAA engaged in some sort of breach (which Fox News disputes), that would not permit Petitioner to repudiate the Clause as to the Fox Parties.  *See Gomez v. MLB Enterprises, Corp.*, No. 15-CV-3326(CM), 2018 WL 3019102, at *13 (S.D.N.Y. June 5, 2018) ("This Court adheres to the rule that a ***materially breaching party*** cannot enforce a contract against a non-breaching party.") (emphasis added); *Rennaker Co. Consulting, Inc. v. TLM Grp., LLC*, No. 16 CIV. 3787 (DAB), 2017 WL 2304302, at *2 (S.D.N.Y. May 18, 2017) ("[I]t is black letter law that non-parties ordinarily cannot be held liable for a breach of contract.").

**C.      The Petition should be dismissed with prejudice.**

In addition to failing to demonstrate her entitlement to the injunctive relief she seeks, Petitioner has failed to state a claim upon which relief should be granted.  Even accepting the factual allegations in the Petition as true, Petitioner has not stated a claim that is plausible on its face because: (1) her challenges to the arbitration proceedings are premature before a final award has issued, *see supra* Section II(B)(1) and (2) her challenges to the enforceability of her Arbitration Clause are barred by *res judicata*, *see supra* Section II(B)(2).  Where, as here, a plaintiff both fails to make the showing of success on the merits required to obtain injunctive relief and fails to state a claim, both denial of the request for TRO and dismissal of the complaint in its entirety are appropriate.  *See Women for Am. First*, 520 F. Supp. 3d at 549 (denying motion for TRO and granting motion to dismiss).  And, because the Petition here is "part of a pattern of vexacious [sic], litigious conduct repeatedly employed by [Petitioner]" in an attempt to frustrate and delay the ongoing arbitration proceedings, dismissal with prejudice is warranted.[8]  *Truong v. Cuthbertson*, No. 15-CV-4268 (DLI)(LB), 2015 WL 4771852, at *2 (E.D.N.Y. Aug. 12, 2015) (dismissing vexatious complaint with prejudice), *modified on reconsideration*, No. 15-CV-4268(DLI)(LB), 2016 WL 737907 (E.D.N.Y. Feb. 22, 2016); *see also Havensight Cap., LLC v. Facebook, Inc.*, No. CV 17-6727 FMO(MRWx), 2018 WL 6340757, at *20 (C.D. Cal. Sept. 24, 2018) (granting motion to dismiss with prejudice third frivolous action filed against defendant), *aff'd*, 776 F. App'x

---

[8] In addition to *Tantaros I*, *Tantaros II*, the pending arbitration, and this suit, Tantaros has filed: (1) *Tantaros v. Fox News Network, LLC, et al.*, Case No 1:17-cv-02958-GBD, in the Southern District of New York, asserting electronic surveillance related claims, which were dismissed; (2) *Tantaros v. Fox News Network, LLC, et al.*, Case No. 1:25-cv-01675-LTS, in the Southern District of New York, alleging largely the same claims that are pending in arbitration; and (3) *Tantaros v. Fox Corporation, et al.*, Case No. 161773/2023, in New York State Court, also alleging largely the same claims that are pending in arbitration.

420 (9th Cir. 2019). In light of Petitioner's history of frivolous and vexatious litigation in this dispute, the Fox Parties respectfully request that the Court dismiss her Petition with prejudice.

## V.    **CONCLUSION**

For the reasons stated herein, the Fox Parties respectfully request that the Court DENY Petitioner's request for a temporary restraining order and DISMISS her Petition in its entirety with prejudice.

Dated: March 21, 2025                    Respectfully submitted,

                                         PAUL HASTINGS LLP

By: _____
    Paul C. Evans, Bar No. 5824438
    paulevans@paulhastings.com
    Krissy A. Katzenstein, Bar No. 5956602
    krissykatzenstein@paulhastings.com
    200 Park Avenue
    New York, New York 10166
    Telephone:  1(212) 318-6000
    Facsimile:  1(212) 319-4090

    *Attorneys for Respondents Fox News Network,*
    *LLC, Suzanne Scott, Irena Briganti, and*
    *Dianne Brandi*

## WORD COUNT CERTIFICATION

I, Paul C. Evans, hereby certify that this Memorandum of Law complies with the word count limit set forth in Local Rule 7.1(c) because it contains 4,821 words, excluding the parts of the Memorandum of Law exempted by Local Rule 7.1(c).  In preparing this certification, I have relied on the word count of the word-processing system used to prepare this Memorandum of Law.

Paul C. Evans